IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No.: 2:18-cr-484-ECM-SMD |
| ) | |
| CHRISTOPHER DEON LEONARD ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Christopher Deon Leonard ("Defendant") is charged with violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute marijuana; 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon; and 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1). Evidence of these alleged crimes was seized from Defendant's person after the vehicle in which he was traveling as a passenger was pulled over for an alleged traffic violation, and Defendant fled from the vehicle on foot.

On February 15, 2019, Defendant filed a Motion to Suppress (Doc. 17). Defendant's motion seeks an order suppressing, based upon the exclusionary rule, "all tangible and testimonial evidence recovered as a result" of what Defendant asserts was an unlawful traffic stop. (Doc. 17) at 1. Defendant argues that officers lacked the requisite probable cause to justify the traffic stop, making his subsequent detention unlawful and the evidence obtained therefrom illegal. *See generally* (Doc. 17).

The Government responded (Doc. 23) to Defendant's motion and, on March 19, 2019, the undersigned conducted a suppression hearing on the matter with Defendant

proceeding *pro se*.[1] (Doc. 28). The issues presented by Defendant are now ripe for recommendation to the United States District Judge. Upon consideration of Defendant's motion, the Government's response, and the evidence and testimony adduced at the suppression hearing, the undersigned Magistrate Judge RECOMMENDS that Defendant's Motion to Suppress be DENIED.

I.   **FINDINGS OF FACT**[2]

On February 7, 2017, Detective Daniel Deberry ("Detective Deberry") and Detective Cornelius Livingston ("Detective Livingston"), who are officers with the Montgomery City Police Department's gang unit, were patrolling the Smiley Court public housing project in West Montgomery, Alabama. Tr. 6:4-5; 6:15-21; 32:1-6; 32:18-21. Smiley Court is considered a high-crime area, and is known for drug trafficking and shootings. Tr. 6:12-14; 26:8-12; 29:8-12; 38:7-10.

During their patrol, Detective Deberry and Detective Livingston observed a white Mercury Grand Marquis pull out of a parking space in front of their vehicle and

---

[1] Prior to the suppression hearing, the undersigned conducted a *Faretta v. California,* 422 U.S. 806 (1975), hearing regarding Defendant's Motion to Proceed *Pro Se* and Appointment of Stand By Counsel (Doc. 24) and his *pro se* Motion for Appearance (Doc. 25). After substantial inquiry, the undersigned determined that Defendant was making a knowing and voluntary waiver of his right to counsel and therefore granted Defendant's request to proceed *pro se* as well as his request for his court-appointed counsel to serve as stand-by counsel.

[2] The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)). In resolving a motion to suppress, "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of the witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). In cases where an officer's testimony is in direct conflict with a defendant's testimony, a "trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." *Id.*

immediately make a left turn onto Marlyn Drive without signaling. Tr. 7:4-6; 7:18-25; 33:4-6; 35:14-17.  The Grand Marquis contained a driver and one passenger.  Tr. 8:1-3. Upon observing the failure to signal, the officers turned on their lights and siren to make a traffic stop. Tr. 7:21-25; 33:4-6; 33:2-4. Prior to the Grand Marquis coming to a complete stop, the officers observed the front passenger door of the Grand Marquis fly open. Tr. 7:21-8:11; 33:4-7. Defendant bailed out of the vehicle and began sprinting away. Tr. 8:9-20; 33:4-17. Detective Deberry ran after the fleeing passenger while Detective Livingston remained with the Grand Marquis and its driver, Michael Perkins. Tr. 8:21-23; 34:23-35:10.

     Detective Deberry was wearing a police tactical vest that has "POLICE" in bold fluorescent letters across the chest and a badge on the left side.  Tr. 9:1-3.  During his pursuit of Defendant, Detective Deberry commanded Defendant to stop, but Defendant continued running. Tr. 9:4-8. As he was chasing behind Defendant, Detective Deberry noticed the smell of marijuana coming from Defendant's person. Tr. 9:9-16; 14:14-20. Detective Deberry caught up with Defendant and took him to the ground.  Tr. 9:17-22. After a brief struggle, Detective Deberry gained control with Defendant lying flat on his stomach. Tr. 9: 20-25; 10:1-9. He rolled Defendant over onto his back, Tr. 9:21-23, and as he did, Defendant's shirt came up, and Detective Deberry noticed a black pistol inside of a holster that was clipped to the front of Defendant's waistband. Tr. 9:21-25. Detective Deberry patted down Defendant, and noticed several "lumps" in Defendant's shorts. Tr. 10:11-16; 20:2-8. When he removed the lumps, Detective Deberry discovered that they were bags of marijuana. Tr. 10:17-20.

In contrast to the testimony of the officers, Mr. Perkins testified that he was certain that he signaled prior to making a left turn onto Otis Lane—not Marlyn Drive—because he saw the officers, knew they were police, and did not want to give them any reason to stop him. Tr. 47:1-22; 49:14-50:4. Mr. Perkins further testified that his vehicle came to a complete stop prior to Defendant bailing out and fleeing. Tr. 48:6-16. No written traffic citation was issued to Mr. Perkins. Tr. 11:12-18.

## II. DEFENDANT'S ARGUMENT

Defendant argues that his detention was unlawful because Detective Deberry and Detective Livingston lacked probable cause to justify the traffic stop of Mr. Perkins's vehicle. (Doc. 17) at 2-4. Specifically, Defendant asserts that the traffic violation never occurred, therefore making the stop pretextual and illegal. *Id*. Thus, because Defendant believes the initial stop to be illegal, Defendant asks the court to suppress, under the exclusionary rule, the evidence that was obtained from his person after he fled Mr. Perkins's vehicle and was detained by Detective Deberry. *Id*.

## III. THE GOVERNMENT'S RESPONSE

In response, the Government argues that Defendant was lawfully detained because there was probable cause, and at the very least reasonable suspicion, for the traffic stop. (Doc. 23) at 2-5. Because the officers lawfully stopped the vehicle, the Government asserts, Defendant's Fourth Amendment rights were not violated. *Id*. at 5.

Alternatively, the Government argues that Defendant's Fourth Amendment rights were not implicated during the initial traffic stop because Defendant fled on foot and, therefore, was not seized for purposes of the Fourth Amendment. *Id*. at 5-6. The

Government contends that Defendant fled prior to the vehicle stopping, and that, by running, Defendant did not submit to the Detectives' show of authority. *Id*. at 6. In other words, the Government argues that the traffic stop did not rise to the level of a constitutionally protected Fourth Amendment seizure because Defendant was not seized at that time. *Id*. Because no seizure of Defendant occurred during the traffic stop, the Government asserts, Defendant's Fourth Amendment rights were not violated. *Id*. at 7.

Further, the Government argues that, at the time Defendant was seized by Detective Deberry, there was reasonable, articulable suspicion to detain him based upon the totality of the circumstances, including his flight from police. *Id*. at 7-8. Specifically, the Government asserts that, based upon the totality of the circumstances, Detective Livingston and Detective Deberry, who were patrolling in a high-crime area that is known for illegal drug activity, had reasonable suspicion to pursue and detain Defendant, who was sprinting away from police after they activated their lights and siren to make a traffic stop. *Id*. at 8. Accordingly, the Government argues that because there was reasonable, articulable suspicion for Detective Deberry to detain Defendant, Defendant's Fourth Amendment rights were not violated. *Id*.

**IV.   APPLICABLE LAW**

The Fourth Amendment protects against "unreasonable searches and seizure." U.S. Const. amend. IV. "A person is seized by the police . . . when the officer by means of physical force or show of authority terminates or restrains his freedom of movement[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotes and citations omitted). To constitute a seizure, an "arrest requires *either* physical force . . . *or*, where that is absent,

*submission* to the assertion of authority." *California v. Hodari*, 499 U.S. 621, 626 (1991) (emphasis original). A subject running away from the police "was not seized until he was tackled." *Id.* at 629.

A traffic stop ordinarily constitutes a seizure of both the driver and any passengers, *Brendlin*, 551 U.S. at 254, and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" regardless of "the actual motivations of the individual officers involved." *Whren v. United States,* 517 U.S. 806, 809-10, 813 (1996) (holding that pretextual traffic stop is lawful if supported by probable cause of any traffic violation).

In determining whether a seizure is lawful, the type of encounter between police and the citizen determines the amount of Fourth Amendment scrutiny to be applied. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). It is well established that an officer may conduct a brief, warrantless, investigatory stop of an individual, commonly known as a *Terry* stop, when the officer has reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 30 (1968). To determine whether reasonable suspicion exits, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, (2002); *United States v. Cortez,* 449 U.S. 411, 417 (1981). The totality of the circumstances must support a finding of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop and frisk. *Terry,* 392 U.S. at 21.

V.     DISCUSSION

   **A. *Defendant Was Not Seized for Purposes of the Fourth Amendment During the Traffic Stop; Therefore, Defendant's Fourth Amendment Rights Were Not Violated Based Upon the Stop.***

In the context of a traffic stop, "stopping an automobile and detaining its occupants constitute a seizure." *Berkemer v. McCarty*, 468 U.S. 420, 436-37 (1984); *see also United States v. Hensley*, 469 U.S. 221, 226 (1985). However, because a seizure requires either physical force or "submission to the assertion of authority," the Fourth Amendment does not apply to a person who is engaged in the act of fleeing from the police. *United States v. Chappell*, 261 F. Supp. 3d 1202, 1205 (M.D. Ala. 2017) (citing *Hodari*, 499 U.S. at 626).

Here, as an initial matter, the undersigned finds as a matter of fact that Detective Deberry and Detective Livingston observed Mr. Perkins fail to signal before turning left. For the reasons set forth more fully in this section, the undersigned credits the testimony of the Detectives over the testimony of Mr. Perkins regarding the use of the blinker. In short, the officers' calm and confident demeanor on the stand, coupled with the consistencies in their stories, cause the undersigned to find their version of events credible. Because the undersigned finds that the officers observed a traffic violation under Ala. Code § 32-5-58 (1975) when Mr. Perkins failed to use his turn signal, the undersigned concludes that the traffic stop was based upon probable cause.

Nonetheless, the undersigned concludes that Defendant was not seized for purposes of the Fourth Amendment when officers initiated the traffic stop of Mr. Perkins's vehicle because, prior to it stopping, Defendant bailed out of the vehicle and sprinted away. Defendant was not physically restrained by the police at the time of the traffic stop and he

7

certainly never submitted to their authority. This conclusion is based upon the testimony elicited during the suppression hearing and a commonsensical evaluation of the circumstances leading up to Defendant's flight from police.

In the suppression hearing before the undersigned, the witnesses were questioned extensively regarding whether Defendant exited Mr. Perkins's vehicle prior to it coming to a complete stop. Defendant's witness, Mr. Perkins, testified that the vehicle came to a complete stop prior to Defendant exiting and fleeing from police. In contrast, Detective Livingston and Detective Deberry both testified that Defendant exited Mr. Perkins's vehicle prior to the vehicle coming to a complete stop.

As an initial matter, the undersigned finds it unbelievable that Defendant, in attempting to escape from the police, would wait until Mr. Perkins's vehicle came to a complete stop before bailing out. Instead, it seems much more logical that Defendant would bail from the Grand Marquis as soon as it slowed enough for him to make a reasonably safe exit.

Moreover, the undersigned credits the testimony of Detective Livingston and Detective Deberry. In so doing, the undersigned considers the demeanor of Detective Livingston and Detective Deberry on the witness stand, the consistencies in their testimonies, and their general lack of personal interest in the outcome of this case. Throughout the hearing, both officers maintained that Defendant exited Mr. Perkins's vehicle prior to it coming to a complete stop. Further, both officers' testimonies were similar regarding when and where they observed Defendant exit the vehicle. Neither Detective Livingston nor Detective Deberry appeared nervous or evasive. Finally, neither

Detective Livingston nor Detective Deberry appear to have a personal stake in the outcome of Defendant's case.

On the other hand, the undersigned does not credit the testimony of Mr. Perkins because of his demeanor on the stand, his arguable interest in the outcome of the case, and his somewhat conflicting statement that he provided in his affidavit regarding the events leading up to the traffic stop. As to potential bias on the part of Mr. Perkins, the undersigned notes that, upon cross-examination, Mr. Perkins admitted that in March 2017, he posted on his Facebook page "Free Christopher Leonard." Tr. 52:1-7. He further admitted that he would "like to see [Defendant] free." Tr. 52:8-9. This indicates to the undersigned that Mr. Perkins has at least some personal interest in the outcome of Defendant's case. As to the arguably conflicting statement in his affidavit, Mr. Perkins's affidavit states: "As I pulled out of the parking space, I made sure I put my blinker on because I saw the police coming. A few seconds after pulling off, that's when the police stopped me." Tr. 54:12-15. During cross-examination, the Government questioned Mr. Perkins as to why his affidavit failed to state that he turned on his blinker prior to making a left-hand turn onto Otis Lane. *See* Tr. 54:18-25. In response, Mr. Perkins testified that his reference to the blinker in the affidavit referred to his left turn onto Otis Lane. Finally, while it could simply be that Mr. Perkins was unfamiliar with testifying under oath in federal court, Mr. Perkins seemed somewhat uncomfortable on the witness stand.

For those reasons, the undersigned finds as a matter of fact that Defendant bailed out of Mr. Perkins's vehicle prior to it coming to a complete stop and was therefore not seized for Fourth Amendment purposes during the traffic stop. Moreover, even if the court

9

were to conclude that Mr. Perkins's vehicle made a momentary stop before Defendant bailed out, it would not affect the Court's analysis. A seizure requires physical force or submission. *Hodari*, 499 U.S. at 626. It is uncontested that Defendant did not submit to the officer's authority at the time of the traffic stop. Rather, he bailed out and sprinted away. Therefore, he was not seized whether he bailed from the Grand Marquis while it was rolling or immediately after it came to a complete stop. *United States v. Chappell*, 261 F. Supp. 3d 1202, 1204 (M.D. Ala. 2017) (holding that defendant was not seized when he fled on foot after officers attempted to execute a traffic stop on his vehicle).

### B. Detective Deberry Had Reasonable Suspicion to Stop and Detain Defendant After Observing Him Flee From Mr. Perkins's Vehicle; Therefore, Defendant's Fourth Amendment Rights Were Not Violated.

Although Defendant's Motion to Suppress is based upon the argument that the Detectives lacked probable cause to conduct the traffic stop of Mr. Perkins's vehicle, *see generally* (Doc. 17), the Court will also examine the events that occurred after Defendant bailed out of the Grand Marquis and fled from the police to determine whether they comport with the Fourth Amendment.

Defendant was seized when Detective Deberry tackled him. *See, Hodari*, 499 U.S. at 629. All police activity prior to that moment constituted a show of police authority that Defendant refused to submit to. *Id.* To justify his seizure of Defendant, Detective Deberry must be able to articulate some minimal, objective justification for the stop that is based upon his reasonable suspicion that Defendant was engaged in, or was about to engage in, criminal conduct. *See United States v. Mikell*, 102 F.3d 470, 474-75 (11th Cir. 1996); *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989). Whether that objectively

10

reasonable suspicion has been established depends upon the totality of the circumstances, and courts consider "the collective knowledge of the officers involved in the stop." *United States v. Sokolow,* 490 U.S. 1, 7-8 (1989); *Williams*, 876 F.2d at 1524.

The Supreme Court has held that flight from police may give rise to the reasonable suspicion required to stop and detain an individual for a brief period of time even if officers would not have otherwise had justification for making a stop. *See Illinois v. Wardlow,* 528 U.S. 119, 121, 124-25 (2000) ("When the noticed presence of officers provokes a suspect's headlong flight in a high crime area, the officers are justified in suspecting criminal activity on the part of the suspect and a *Terry* stop is warranted."). This rule is derived from the general principle that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id.* at 125. There is no obligation to cooperate with police, but "unprovoked flight is simply not a mere refusal to cooperate." *Id.* "It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124. While it is true that "[i]nnocent persons might run from police officers[,] . . . flight creates an ambiguity[,] and the officers may stop the person to resolve the ambiguity." *United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003).

Further, an officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons. *Terry,* 392 U.S. at 24. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. If reasonable suspicion supports a *Terry* stop, the officer's observation of a bulge under a defendant's shirt at the waist warrants a pat-down for

11

weapons to ensure the officer's safety. *United States v. Pantoja-Soto,* 768 F.2d 1235, 1236 (11th Cir. 1985).

The undersigned turns first to whether Defendant's detention by Detective Deberry was based upon reasonable suspicion that Defendant was engaged in, or was about to engage in, criminal conduct. The undisputed facts indicate that (1) Defendant ran from the police after Detective Deberry and Detective Livingston put on their lights and siren for a traffic stop; (2) The traffic stop occurred in a known high-crime area; (3) Upon giving chase, Detective Deberry believed he smelled marijuana coming from Defendant's person; and (4) Defendant ignored Detective Deberry's repeated commands to stop, and continued to flee until Detective Deberry caught and tackled him.

Upon gaining control of Defendant on the ground, Detective Deberry rolled him over onto his back and observed a handgun in his waistband. Detective Deberry was then justified in conducting a pat down of Defendant for the purpose of officer safety. *See United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002) (concluding that the stop of the defendant was supported by reasonable suspicion and that the officer's observation of a bulge under the defendant's shirt justified a pat-down for officer safety). After feeling bulges in Defendant's shorts which could not be identified at the time, Detective Deberry was permitted to remove them from Defendant's shorts. Accordingly, the handgun and the bags of marijuana that were recovered from Defendant after he was detained were legally obtained as the result of a lawful *Terry* stop and pat-down.

## VI.   CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Defendant's Motion to Suppress (Doc. 17) be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 5, 2019**.[3]  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon

---

[3] Due to the current timing of trial, the undersigned has shortened the usual period for filing objections. *See Sabal Trail Transmission, LLC. v. 7.72 Acres In Lee Cty., Ala.*, 2016 WL 10789585, at *1 (M.D. Ala. 2016) ("where exigencies exist, a court may shorten the time for filing objections."); *SEC v. Lauer*, 2016 WL 3225306, at *2 (S.D. Fla. Mar. 3, 2016) (shortening the usual fourteen day objection period due to concerns about the fiscal quarter end); *United States v. Williams*, 2016 WL 304320 (M.D. Ala. Jan. 22, 2016) (Mendoza, J.) (noting that the magistrate judge ordered that due to exigent circumstances, the objections period was shortened to two days and adopting the report and recommendation); *Esco Marine, Inc. v. SS Pacific Star*, 2011 WL 5026192 at *1, n.1 (E.D. Cal. Oct 21, 2011) (Mueller, J.) (shortening the time period for objections because "exigencies of the calendar require[d]" it) (quoting *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978), *cert denied*, 435 U.S. 955 (1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate judge's report and recommendation where exigencies existed, stating that the ten-day objections period constituted a "maximum, not a minimum.")); *Alvarez v. Tracey ex rel. Gila River Indian Cty. Dep't of Rehab. & Supervision,* 2012 WL 1038755, at *7 (D. Ariz. Feb. 10, 2012) ("[i]n it discretion, the Court will shorten the time for filing of objections") (citing *Tripati v. Drake*, 908 F.2d 977 (9th Cir. 1990) (the court need not afford the parties the full amount of time allotted for filing objections; the time allotted is a maximum, not minimum)).

grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 27th day of March, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE